UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AARON C. BOWENS,

            Plaintiff,

     v.                                  Case No. 19-C-1540

BILLY HOWLED,

            Defendant.

---

## DECISION AND ORDER

---

Plaintiff Aaron C. Bowens, who is incarcerated at the Fond du Lac County Jail and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Milwaukee County Jail. Bowens is proceeding on a claim under the Fourteenth Amendment based on his allegations that Defendant Billy Howled failed to protect him from another inmate who attacked him. This matter comes before the Court on Howled's motion for summary judgment. Howled's motion will be granted and the case will be dismissed.

## BACKGROUND

At the relevant time, Howled was a corrections officer at the Milwaukee County Jail, where Bowens was incarcerated as a pretrial detainee. Dkt. No. 53 at ¶¶1, 18-20; Dkt. No. 54 at 12. On September 21, 2019, the night before the incident at issue, Bowens observed an inmate acting strangely, including talking to himself, pretending to talk on an imaginary cell phone, and "mean-mugging" other inmates. Dkt. No. 53 at ¶40; Dkt. No. 54 at 3. Although Bowens was not afraid of the inmate and did not believe he was in danger, *id.* at ¶¶41, 55, he notified staff of the inmate's

behavior and said he should be evaluated by psychological services. *Id.* at ¶¶25, 87. An officer contacted psychological services, who, after evaluating the inmate, allowed him to return to Bowens' housing unit. Dkt. No. 59-3 at 21.

The next day, on September 22, 2019, about an hour before the incident at issue, Bowens says he complained to Howled about the inmate's strange behavior and him making mean faces. Dkt. No. 71 at ¶26. Up to that point, the inmate's behavior was only strange; he had not threatened anyone or challenged anyone to fight. Dkt. No. 59-3 at 98. At about 9:00 a.m., Howled was conducting medication pass in another part of the housing unit. Dkt. No. 53 at ¶2. When he finished, he heard corrections officer Toshia Olaiz yell from the control desk for him to respond to two inmates who were arguing. *Id.* at ¶4. Howled responded and saw an inmate standing shirtless and arguing with Bowens; he was accusing Bowens of having killed his grandmother and brother. *Id.* at ¶¶6, 8. He also observed the inmate intermittently talking on an imaginary cell phone. *Id.* at ¶6. Howled recognized Bowens but did not recognize the shirtless inmate. *Id.* at ¶7.

Howled asserts that he tried to calm the inmate and ordered him to lock in to his cell, Dkt. No. 53 at ¶8 (Bowens asserts that Howled said only that they should go talk in the hall, Dkt. No. 71 at ¶8), but the inmate disregarded his order and responded, "Shut yo bitch ass up and call my ride because I'm finna kill him," Dkt. No. 74 at ¶¶16, 18. The inmate then lunged at Bowens and tried to punch him. Dkt. No. 53 at ¶9. Howled called for assistance, as did the officer at the control desk who was watching the interaction on camera. *Id.* at ¶¶9, 10. Per his training, Howled did not intervene while he was alone; instead, he waited for backup to arrive. *Id.* at ¶¶11, 12. Within thirty seconds of the calls for assistance, several corrections officers and jail supervisors arrived to break up the fight. *Id.* at ¶13. The inmate was then subdued with a taser and Bowens was pulled from the fight by a corrections officer. *Id.* at ¶14.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Bowens asserts that Howled is liable for failing to protect him from another inmate because he disregarded Bowens' complaint about the inmate's odd behavior, failed to prevent the inmate from attacking him, and failed to call for help or otherwise intervene after the inmate attacked him. Bowens was a pretrial detainee, so his claim arises under the Fourteenth Amendment and is subject to the objective unreasonableness standard. *See Hardeman v. Curran*, 933 F.3d 816, 822-23 (7th Cir. 2019). To prevail on his claim, Bowens must prove the following: "(1) [Howled] made an intentional decision with respect to the conditions under which [Bowens] was confined; (2) Those

3

conditions put [Bowens] at a substantial risk of suffering serious harm; (3) [Howled] did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of [Howled's] conduct obvious; and (4) By not taking such measures, [Howled] caused [Bowens'] injuries." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (cited with approval by *Hardeman*, F.3d at 823 and *Miranda v. Cty. of Lake*, 900 F.3d 335, 351, 354 (7th Cir. 2018)).

The parties agree that Howled did not follow-up on Bowens' complaints about the inmate's odd behavior, was unable to prevent the inmate from attacking Bowens, and did not intervene in the inmate's attack before assistance arrived. They also agree that Bowens suffered injuries as a result of the inmate's attack. Thus, the question is whether Bowens sets forth evidence from which a jury could reasonably conclude that he faced a substantial risk of serious harm and whether Howled failed to take reasonable measures to abate that risk, even though a reasonable officer would have appreciated the high degree of risk involved.

No jury could reasonably conclude that Bowens faced a substantial risk of harm until just prior to the inmate attacking him. Without doubt, an inmate talking to himself, making mean faces at others for no reason, and pretending to talk on an imaginary cell phone is odd. But odd behavior does not equate to violent, threatening, or dangerous behavior. Bowens had reported the inmate's behavior the previous day, and after evaluating the inmate, psychological services decided the inmate could continue to be housed in general population. Bowens' complaints to Howled an hour before he was attacked were the same complaints he had made the night before. There is no evidence suggesting that the inmate's behavior had escalated or materially changed when Bowens complained to Howled. Given that the inmate was only acting strangely and not violently, no jury

could find that a reasonable officer would conclude that the inmate posed a substantial risk of harm to Bowens at the time he complained to Howled.

An hour later, however, the inmate clearly posed a substantial risk of harm to Bowens. He was standing near Bowens with his shirt off, making statements about killing Bowens, and accusing Bowens of killing his grandmother and brother. Still, no jury could reasonably conclude that Howled failed to take reasonable measures to abate the risk Bowens faced. According to video footage, Howled approached the inmate with his hands out and gestured for him to calm down while he ordered him to put his shirt back on. Howled says he told the inmate to lock up; Bowens says he told the inmate that they should go talk about his concerns in the hall. Either way, Howled took steps to calm the inmate and move him away from Bowens. The video shows that, a mere seventeen seconds after Howled arrives, Howled radios for help. Bowens asserts that Howled never called for help, but his assertions are contradicted by the video evidence and the fact that, just under thirty seconds later, several officers arrived to assist. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment.") In light of how quickly the events unfolded, no jury could reasonably find that Howled trying to calm the inmate and remove him from the area and then radioing other officers for help once the inmate attacked were unreasonable efforts to abate the risk Bowens faced.

Finally, Bowens asserts that, after the inmate attacked him, Howled should have immediately intervened rather than wait for assistance. Howled explains, however, that officers are trained to wait for assistance before intervening in a fight. Inmate fights can pose a significant danger to an officer who is by himself because he is vulnerable to attack from other inmates not

5

involved in the altercation. Dkt. No. 53 at ¶12. Further, because the jail treats a call for assistance in response to a fight as an emergency, Howled had reason to believe that other officers would quickly respond to his call. *See id.* As noted, officers responded within thirty seconds. With this context, no jury could reasonably conclude that Howled's decision to wait for assistance rather than intervene by himself was objectively unreasonable. Howled is entitled to summary judgment.

## CONCLUSION

For these reasons, Howled's motion for summary judgment (Dkt. No. 52) is **GRANTED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of January, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.